UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA C.,[1] | ) NO. EDCV 19-1233-KS |
|         Plaintiff, | ) |
|    v. | ) MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
|         Defendant. | ) |

### INTRODUCTION

Gina C. ("Plaintiff") filed a Complaint on July 3, 2019, seeking review of the denial of her application for a period of disability and disability insurance ("DI") and supplemental security income ("SSI"). On August 7, 2019, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12, 13.) On April 9, 2020, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 19.) Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits, or, in the alternative, remanding for further proceedings. (Joint Stip. at 21.) The Commissioner

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 22.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

In January and February 2015, Plaintiff, who was born on September 14, 1965, protectively filed applications for DI and SSI respectively.[2] (*See* Administrative Record ("AR") 15, 196, 202; Joint Stip. at 2.) Plaintiff alleged disability commencing December 27, 2014 due to: arthritis; nausea; vomiting; headaches; depression; lupus; fibromyalgia; scleroderma; connective tissue disorder; and "heart issues." (AR 239.) Plaintiff previously worked as an office assistant (DOT 239.567-010). (AR 23, 51, 231.) The Commissioner denied Plaintiff's applications initially (AR 78-79) and on reconsideration (AR 106-07). Plaintiff then requested an administrative hearing. (*See* AR 139.) On July 24, 2018, Administrative Law Judge Paul Isherwood (the "ALJ") held a hearing at which Plaintiff, who was represented by counsel, testified as did vocational expert Luis O. Mas (the "VE"). (AR 31-55; *see also* AR 15 (clarifying VE's name).) On August 16, 2018, the ALJ issued an unfavorable decision, denying Plaintiff's applications. (AR 12-24.) On May 17, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (AR 17.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 27, 2014. (AR 17.) The ALJ determined that Plaintiff had the following severe impairments: "lupus; and

---

[2] Plaintiff was 50 years old on the alleged onset date and was thus defined as a person closely approaching advanced age under agency regulations. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).

thyroid cancer/Hashimoto's." (AR 17.) In reaching that conclusion, the ALJ found that Plaintiff had other medically determinable impairments—migraines, GERD, scoliosis, and mood disorder—but he determined that these impairments were non-severe for the purposes of step two of the sequential analysis. (AR 18-19.) The ALJ also concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (AR 19.) The ALJ determined that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform a full range of medium work.[3] (AR 19.)

The ALJ found that Plaintiff was able to perform her past relevant work as an office assistant (DOT 239.567-010). (AR 23.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of his decision, August 16, 2018. (AR 23-24.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they

---

[3] Medium work involves lifting up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. SOCIAL SECURITY ADMINISTRATION, PROGRAM OPERATIONS MANUAL SYSTEM ("POMS") DI 25001.001. Medium work also usually requires the following: walking or standing for approximately six hours in an eight hour workday; frequent stooping and crouching, the ability to grasp, hold, and turn objects; the ability to frequently lift or carry objects weighing 25 pounds, which is often more critical than being able to lift up to 50 pounds at a time; and the capacity to perform sedentary and light work. *Id.*

are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

\\
\\
\\
\\
\\
\\
\\
\\

# DISCUSSION

There is one issue in dispute: whether the ALJ properly considered Plaintiff's statements about her symptoms and limitations. (Joint Stip. at 4.)

## I. Plaintiff's Statements

There are two sources of Plaintiff's statements about her symptoms and limitations: one, Plaintiff's written statements in an April 1, 2015 Adult Function Report; and, two, Plaintiff's oral statements during the July 24, 2018 administrative hearing.

### A. April 1, 2015 Adult Function Report

Plaintiff alleges a disability onset date of December 27, 2014. On April 1, 2015, Plaintiff completed an Adult Function Report, in which she reported that every day she wakes up in "extreme pain," and, most days, she "can barely walk or get out of bed." (AR 265.) She reported that as soon as she opens her eyes, she starts dry heaving and/or throwing up and often has a headache. (AR 265.) She spends most of her days in her bed, sleeping, watching TV, or playing on an iPad. (AR 266.) She reported that she also goes outside at least once a day and can both walk and drive a car. (AR 268.) Once a week she takes her grandson to school, and she also helps him with his homework. (AR 266.) She shops by computer once or twice a week and "often drives kids to store to shop for [her]." (AR 268.) However, when asked to list the places she goes on a regular basis, Plaintiff wrote "none." (AR 268.)

Plaintiff reported that "Reanna" feeds the animals, prepares meals, and does house chores. (AR 266.) She wrote that her impairments make dressing "painful," bathing "take[] longer," and getting on and off the toilet "painful." (AR 266.) She wrote that she can prepare simple meals "once in a while" but finds it hard to stand for long periods of time. (AR 267.)

She similarly reported that she can "sometimes" wash dishes, clean the kitchen, and do a little laundry, but she needs someone else to finish if she starts vomiting unexpectedly or her bones "stiffen up"  (AR 267.)

Plaintiff reported that she can lift approximately 10 pounds, cannot get back up if she squats, needs help sitting up if she bends, and cannot stand for very long. (AR 269.) Plaintiff stated that her illness is unpredictable and, although she does have good days, most days are very bad and painful. (AR 271.) Similarly, she wrote that "sometimes" she can do normal things but she then has to rest often. (AR 271.)

**B.  July 24, 2018 Hearing Testimony**

Three years later, on July 24, 2018, Plaintiff testified at the administrative hearing. She testified that she lives with her 17-year old grandson. (AR 36.) Plaintiff testified that, at 17, almost 18, years old, her grandson mostly takes care of himself and helps Plaintiff, but she has to make sure to get him to school "and stuff." (AR 45.) She stated that when she feels okay, her other grandkids come over and hang out at her house so that she can spend some time with them. (AR 46.)

Plaintiff testified that she was seeing 10 or 11 different doctors for lupus, arthritis, Hashimoto's, and connective tissue disease. (AR 36.) She testified that her medication causes nausea and fatigue. (AR 37.) She testified that she naps during the day, sometimes for just half an hour and sometimes for a couple of hours. (AR 37.) She testified that getting up from bed in the morning—"getting up from laying down position"—was painful. (AR 37.) She testified that she was able to shower as long as she sat down. (AR 38.) She testified that she is able to dress herself but it takes a little bit of time because "stretching certain positions" is painful. (AR 38.) The ALJ observed that Plaintiff "seem[ed] to fidget a lot when . . . sitting" (AR 38), and Plaintiff confirmed that sitting was "painful" (AR 39). Plaintiff stated that when

she stands, her back feels better but she starts to get lightheaded and dizzy and feels like she is going to pass out. (AR 39.) When asked what the most comfortable position is for her, Plaintiff answered "laying [sic] down in bed." (AR 39.) The ALJ asked Plaintiff how long she could sit before she became uncomfortable, and she indicated that the 45-minute drive to the hearing had been "too long" (AR 39), and she had needed to pull over mid-way to stretch (AR 47).

Plaintiff testified that she goes to the grocery store once or twice a week and usually tries to get in and out quickly, although she can stay longer if she can ride an electric mobility cart. (AR 40.) She testified that her grandson usually carries groceries from the cart to the car or brings them in the house, but "sometimes" Plaintiff is able to do it. (AR 41.) Plaintiff testified that she also tried to do other chores around the house and has set stools up around the house so that she can sit while she does things, like making something to eat. (AR 41.) Plaintiff can do these sorts of activities around the house for 30 minutes before needing to lie down and rest. (AR 41.)

Plaintiff testified that she sees her primary physician once a month and has, in total, approximately five medical appointments a month. (AR 42.) She testified that she usually drives to her appointments but sometimes has one of her kids take her, depending on how she is feeling. (AR 47.)

When asked why she thinks she cannot work, Plaintiff testified, "I'm sick constantly. I mean constantly like pain. I could throw up at any given second. I've just - - I can't even sit still for very long because it hurts. It just - - I'm not me anymore." (AR 48.)

\\
\\
\\
\\

7

**C. ALJ's Decision**

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. (AR 21.) First, the ALJ observed that her statements were inconsistent with the objective medical evidence, which showed "mild and limited" examination findings, including a normal gait, normal muscle strength, and normal sensation. (AR 20.) Second, the ALJ observed that Plaintiff performed activities—namely, driving, doing household chores, going to the grocery store, using the computer, and fixing simple meals—that were inconsistent with her allegations of debilitating symptoms. (AR 20.)

**D. Applicable Law**

An ALJ must make two findings before discounting a claimant's statements regarding the severity and persistence of her symptoms. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding legal error where the ALJ

"failed to identify the testimony she found not credible"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

In March 2016, the Commissioner promulgated Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, which "makes clear what [Ninth Circuit] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Under SSR 16-3p, the ALJ shall determine whether to credit a claimant's statements about his pain and limitations by referring to the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which include: the claimant's daily activities; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the individual uses to relieve pain or other symptoms; and, finally, "any other factors concerning an individual's functional limitations and restrictions." SSR 16-3p. However, the lack of objective medical evidence supporting a claimant's allegations cannot provide the sole basis for rejecting her statements about the severity of her symptoms and limitations. *Id.*; *see also Trevizo*, 871 F.3d at 679; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

**E. Analysis**

Because the purported inconsistency between Plaintiff's subjective complaints and the objective evidence is not, by itself, a legally sufficient reason for declining to credit

Plaintiff's subjective symptom allegations, the validity of the ALJ's decision not to credit Plaintiff's statements in full depends on his second finding—that Plaintiff participated in activities that were inconsistent with her allegedly debilitating symptoms. Specifically, the ALJ found that Plaintiff's ability to drive, do some household chores, go to the grocery store, use the computer, and fix simple meals were inconsistent with her allegations. (AR 20.)

An ALJ may rely on a plaintiff's activities to discount the plaintiff's statements about her symptoms and limitations only when those activities either: (1) "contradict" the plaintiff's testimony; or (2) "meet the threshold for transferable work skills"—that is, where the plaintiff "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639. The ALJ's rationale for discounting Plaintiff's statements falls under the former category. According to the ALJ, Plaintiff's driving, performance of some household chores, grocery shopping, computer usage, and simple meal preparation were inconsistent with her allegations of debilitating pain and unpredictable but recurring nausea and vomiting.

The courts have frequently stated that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (internal quotation arks and citation omitted); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). More recently, in *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), the Ninth Circuit quoted with approval the Seventh Circuit's admonition that:

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a

> minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent and deplorable feature of opinions by administrative law judges in social security disability cases.

*Garrison*, 759 F.3d at 1016 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

The ALJ's characterization of Plaintiff's extraordinarily limited activities as inconsistent with her allegations of constant pain and nausea with frequent but unexpected vomiting is not supported by substantial evidence in the record. Plaintiff, who is responsible for caring for her teenage grandson, testified that she goes grocery shopping once or twice a week but typically relies on her grandson to carry groceries from the cart to the car and/or bring them in the house. (AR 41.) Plaintiff had previously reported that she shops by computer once or twice a week and "often drives kids to store to shop for [her]." (AR 268.)

Plaintiff reported that her illness is unpredictable and, although she does have good days, most days are very bad and painful. (AR 271.) She wrote that she "sometimes" can do normal things but then has to rest often. (AR 271.) To that end, Plaintiff testified that she tries to do chores around the house and has set up stools around her home so that she can sit while she does things, like making something to eat. (AR 41.) Plaintiff testified that she can do these sorts of activities for 30 minutes before needing to lie down and rest. (AR 41.) Plaintiff had previously reported she relies on others to prepare meals and do house chores (AR 266) but can prepare a simple meal "once in a while," so long as she does not need to stand for a long period of time (AR 267). Plaintiff had also reported that she can "sometimes" wash dishes, clean the kitchen, and do a little laundry. (AR 267.) Plaintiff reported that she is sometimes unable to finish these tasks because of a sudden bout of nausea or vomiting. (AR 267.) Plaintiff reported that even using the toilet was difficult because it was "painful to get on and

11

off." (AR 266.) Plaintiff similarly reported that she cannot get back up if she squats. (AR 269.)

Plaintiff testified that her caregiving responsibilities for her grandson were quite limited because he generally took care of himself and even helped her out, but she did have to make sure that she got him to school. (AR 45.) On her prior Adult Function Report, Plaintiff had stated that she took her then 14-year old grandson to school once a week and also helped him with his homework. (AR 266.)

Plaintiff testified that she napped, sometimes for hours, during the day and found it painful to get out of bed in the morning. (AR 37.) Plaintiff testified that sitting was "painful" but she felt lightheaded and dizzy when standing (AR 39), and, therefore, had to sit while showering (AR 38). She testified that she was most comfortable when "laying down in bed." (AR 39.) Accordingly, Plaintiff reported that she spends most of her days in her bed, sleeping, watching TV, or playing on an iPad. (AR 266.)

When asked how long she could sit before she became uncomfortable, Plaintiff answered that sitting for the 45-minute drive to the hearing was "too long" (AR 39) and she had needed to pull over to stretch at one point during the trip (AR 47). The ALJ also observed that Plaintiff was fidgeting "a lot" while sitting during the hearing. (AR 38.)

Suffice to say, Plaintiff's reports of her intermittent activities, seemingly none of which she could perform for much more than 30 minutes without requiring rest, and all of which had to be performed through pain while sitting, are not inconsistent with her allegations of debilitating symptoms. Plaintiff reported that she was unable to complete even a 45-minute drive without stopping to rest, generally relied on others to carry her groceries, needed to sit down in the kitchen to prepare even simple meals, could not get on and off the toilet without pain, and was only comfortable lying down—which is how she ultimately spends most of her

days. These reports are consistent, rather than at odds, with her allegations. The mere fact that Plaintiff, as a grandmother who wishes to maintain a relationship with her grandchildren and the primary caregiver for her teenage grandson, tries to perform normal activities around her home does not indicate that she in fact retains a greater functional capacity than she alleged. *Cf. Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations").

In sum, there is not substantial evidence in the record to support the ALJ's conclusion that Plaintiff performed activities that are inconsistent with her allegations about her symptoms and limitations. Further, because the ALJ's sole other rationale for discounting Plaintiff's excess pain testimony is its purported inconsistency with the medical evidence, his assessment of Plaintiff's statements about her symptoms and limitations as a whole must fall. *See Trevizo*, 871 F.3d at 679; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Therefore, a remand is warranted, and the sole question that remains is whether an award of benefits is warranted.

II.     **Remand for the Immediate Award of Benefits is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). A district court may remand for an award of benefits when the following three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* at 1020, n.26. However, even if those three requirements are met, the Court retains

"flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

Plaintiff's attorney asked the vocational expert at the hearing whether an individual who is capable of working at any exertional level but requires a 30-minute break after approximately 30 minutes of work activity could maintain gainful employment. (AR 52.) The VE answered in the negative: "No, that person is not—is not employable." (AR 52.) The VE also opined in response to a question posed by the ALJ that a person who was otherwise capable of performing her past relevant work but could only work for a total of four hours a day "is not employable." (AR 51.)

Accordingly, the VE was given the opportunity to opine on whether an individual who had the limitations reported by Plaintiff and improperly discredited by the ALJ would be able to maintain gainful employment—and he opined that she could not. In light of the foregoing, the Court finds that further administrative proceedings would serve no useful purpose and, if the improperly discredited evidence were credited as true, the ALJ would indeed be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1020. This case, then, is the "rare exception" in which the credit as true rule should be applied and the matter remanded for the calculation and award of benefits. *See Leon v. Berryhill*, 874 F.3d 1130, 1133 (9th Cir. 2017).

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED to the Commissioner an award of benefits consistent with this memorandum of decision.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 1, 2020

/s/ Karen L. Stevenson
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE